# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANTQUAN TAYLOR,**
*individually and on behalf of a class of similarly situated persons,*

    *Plaintiff,*

    v.

**JAMES H. "JIMMY" CHEBAT; DIRECT DEBT PORTFOLIO MANAGEMENT, LLC; FOREST HILL ACCOUNT MANAGEMENT, INC.; JOEY YOUNGER;** *and* **UNKNOWN ENTITIES 1-10,**

    *Defendants.*

Case Number:

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Antquan Taylor** ("**Mr. Taylor**"), on behalf of himself and all similarly situated individuals, by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **James H.** "**Jimmy**" **Chebat** ("**Chebat**"), **Direct Debt Portfolio Management, LLC** ("**Direct Debt**"), **Forest Hill Account Management, Inc.**, ("**Forest Hill**"), **Joey Younger** ("**Younger**") and, presently, **Unknown Entities 1-10** (jointly, "the Defendants") stating as follows:

## DESCRIPTION OF THE CASE

1.    This is an action brought by Mr. Taylor against all Defendants for violations of Florida's *Civil Remedies for Criminal Practices Act,* § 772.101, Fla. Stat., *et seq.* ("CRCPA."), and the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat.,

*et seq.* ("FCCPA"), the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, et seq. ("FCRA").

2. Defendants regularly collect online payday loans charging triple-digit interest from consumers nationwide, including Florida.

3. On April 22, 2024, Mr. Taylor obtained a $700, short-term loan from the online lender Plain Green Loans, via its platform plaingreenloans.com (the "Loan").

4. The Loan documents identified the lender as "Plain Green Loans" (hereafter, "Plain Green") and the interest rate was stated to be 580.28% -- more than 30 times the maximum legal interest rate in Florida. **SEE PLAINTIFF'S EXHIBIT A.**

5. Plain Green is an online payday lender offering short-term loans to consumers.

6. The majority of Plain Green's loans have annual interest rates exceeding 400%.

7. Triple-digit interest rates are prohibited by a majority of states, including Florida.

8. Mr. Taylor's $700 loan required bi-weekly payments of $169.20 for nine months, meaning he was to repay $3,384.03 for the short-term, $700 loan.

9. Florida has a constitutional right to police its borders and to ensure the welfare of its residents. *Manigault v. Springs*, 199 U.S. 473, 480 (1905) ("This power, which in its various ramifications is known as the police power, is an exercise of the

sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.")

10.    To that end, the State of Florida has long recognized that lending money at usurious interest rates is immoral, harmful, and contrary to public policy.

11.    Florida law prohibits usury and caps interest rates at 18% annually. Interest rates that exceed 18% are considered usurious per § 687.071(1), Fla. Stat., and rates that exceed 25% are considered criminally usurious per § 687.071(2), Fla. Stat.

12.    Loans made with interest rates that are usurious under Florida Statutes are void *ab initio* under Florida law.

13.    Unsurprisingly, the rate of default on short-term loans requiring five times the amount borrowed be repaid is very high. Thus, the sale of non-performing, charged-off loan balances by Plain Green is a key source of revenue.

14.    Direct Debt frequently purchases charged off balances from Plain Green at a steep discount.

15.    Direct Debt also buys debt from sources including 605 Lending and The Loansmith, two other online lenders which make short-term "payday" loans to consumers at 700% interest rates and higher.

16.    Direct Debt then hires various debt collection agencies to collect the balance.

17.     Direct Debt knew many of the debt collection agencies it places Plain Green debts for collection with, will resort to dubious and unlawful collection methods, including frequently implying legal action will be filed against the non-paying consumer unless payment is made immediately.

18.     Direct Debt knew every debt collection agency it places Plain Green debts for collection with (and 605 Lending, The Loansmith, etc.) will engage in collection activity against the alleged debtors, irrespective of if the debts are enforceable or not.

## JURISDICTION AND VENUE

19.     Subject matter jurisdiction for Plaintiff's federal claims arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

20.     This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

21.     This Court may also exercise diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2), as the matter in controversy exceeds $5,000,000 and a member of a class of the plaintiffs is a citizen of a different state from any Defendant.

22.     Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within Florida, including in this District and Division.

## PARTIES

### Mr. Taylor

23.    **Mr. Taylor** is a natural person who at all times relevant has resided in Haines City, Polk County, Florida.

24.    Mr. Taylor is a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), the FCRA, 15 U.S.C. § 1681a(c), and the FCCPA, § 559.55(8), Fla. Stat.

### Chebat

25.    Chebat is a natural person, the founder, and CEO of Direct Debt, and has operated the business since its inception in 2011.

26.    Chebat's online resume on LinkedIn states he "lead the purchase and management of over $1B(illion) in assets" and "optimized a specialty market in subprime assets."

27.    On information and belief, Chebat manages the day-to-day operations of Direct Debt and is ultimately responsible for its collection policies and practices.

28.    On information and belief, Chebat has the final say, as founder and CEO, as to hiring and firing of employees.

29.    Chebat, as founder and CEO, has the ability to examine or review any collection attempts or communications made by the company he leads.

30.    Chebat, to the extend he has delegate authority over collection operations to other employees, has power and control over those managerial employees.

31. Chebat has the ability to review and respond to complaints (legal or otherwise) against his company regarding collection activity and compliance.

32. Chebat may be served at Direct Debt's offices at 1800 Elmwood Ave Buffalo, NY 14207 or his home address, 55 Hallam Rd, Buffalo, NY 14216.

### Direct Debt

33. Debt Direct is a New York limited liability company with a principal address of 1800 Elmwood Ave, Buffalo, NY 14207.

34. Debt Direct is registered to conduct business in the State of Florida, where its Registered Agent is Corporate Creations Network, Inc., 801 US Highway 1, North Palm Beach, FL 33408.

35. Debt Direct is licensed as a Consumer Collection Agency ("CCA") by the Florida Office of Financial Regulation, holding license number CCA9904694.

### Forest Hill

36. Forest Hill is a New York limited liability company with a principal business address of 1 Seneca Street, Suite 2900, Buffalo, NY 14203.

37. Forest Hill is registered to conduct business in the State of Florida, where its Registered Agent is Corporate Creations Network, Inc., 801 US Hwy 1, North Palm Beach, FL 33408.

### Younger

38. Younger is a natural person who is the Director and President of Forest Hill.

39.    On information and belief, Younger manages the day-to-day operations of Forest Hill and is responsible for its collection policies and practices.

40.    Younger is ultimately responsible for the company he manages, including hiring and firing of any employees.

41.    Younger has the ability to review and change any collection policies and procedures at Forest Hill.

42.    Younger has the ability to review and respond to any complaints, legal or otherwise, made against Forest Hill.

43.    Younger, to the extent he has delegated management and control to other employees at Forest Hill, retains ultimate control of the company's operations due to his ability to terminate those employees at his discretion.

44.    Younger has been employed or worked as a debt collector since at least 2003, having obtained a license from the State of Minnesota to act as a debt collector on October 2, 2003.

45.    Younger may be served at Forest Hill's offices at 53840 E. Robinson Rd. Suite 153, Amherst, NY 14228 or his home address, 801 Campbell Blvd Amherst, NY 14228.

**Unknown Entities 1-10**

46.    Unknown Entities 1-10 are debt collection agencies which Direct Debt placed Plain Green loans for collection with. Direct Debt utilizes myriad different

agencies to collect debts it purchases. Once Plaintiff learns the identities of these other collection agencies, he will amend his complaint.

### Defendants Are 'Debt Collectors'

47.     The Defendants are each *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, § 559.55(7), Fla. Stat., in that they use instrumentalities of commerce, including postal mail, telephone, the internet, and/or email, interstate and within the State of Florida, for their business, the principal purpose of which is the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed to another.

### FACTUAL ALLEGATIONS

### Plain Green Makes Unlawful Loan to Mr. Taylor

48.     Mr. Taylor received a short-term, $700 loan from Plain Green in April 2024 which carried a 580.28% interest rate (the "Loan").

49.     Mr. Taylor used the proceeds from the Loan for consumer goods and services for personal and/or family use.

50.     The Loan therefore meets the definitions of *Debt* under the FDCPA and the FCCPA, 15 U.S.C. § 1692a(5) and § 559.55(6), Fla. Stat., respectively.

51.     Mr. Taylor repaid a considerable amount directly to Plain Green.

52.     The majority of his payments were applied to the usurious interest of the Loan.

53.     At some point prior to October 2025, Plain Green assigned the charged-off, $1,952.16 alleged remaining balance to Direct Debt.

54.     Alternatively, Plain Green assigned it to some other party who then later assigned it to Direct Debt.

**Illegal Loan Took Place in Florida; The
Loan is Subject to Florida Law, Under Which it is Void**

55.     Plain Green claims to be operated by the Chippewa Cree Tribe of Rocky Boy's Indian Reservation in Box Elder, Montana ("Chippewa Tribe" or the "Tribe").

56.     Plain Green claims loans are made "on" the Tribe's reservation in Montana and are subject to its own Tribal law.

57.     However, consumers almost always acquire Plain Green loans without leaving their own home.

58.     Thus, the final act of any such loan takes place in the consumer's home state, or wherever else the consumer is located when signing.

59.     Mr. Taylor has never set foot on tribal land or visited the State of Montana.

60.     Mr. Taylor took out the Loan from his home in Polk County, Florida, accessed the PlainGreen.com lending platform from his home in Polk  County, Florida, signed all relevant documents from his home in Polk County, Florida, received correspondence from Plain Green at his home in Polk County, Florida, and had money wired into, and out of, his bank account he maintained in Polk County, Florida, by Plain Green or its service providers.

61.     The final step required of Mr. Taylor was to click a box indicating he accepted the terms and conditions presented by Plain Green.

62.     This final step was performed by Mr. Taylor in Florida.

63.     "Federal courts applying Florida law have held that under *lex loci contractus,* clicking accept is the last act needed" to confirm similar contracts, and as such, an online contract finalized in Florida is subject to Florida law. *Garn v S. Fla. Stadium LLC*, No. 24-25087-CV, 2025 WL 1279071, at *2 (S.D. Fla. Mar. 26, 2025).

64.     The Loan was thus governed by the laws of Florida.

65.     Plain Green, through the application and underwriting process, knew that the Plaintiff resided in Polk County, Florida.

66.     Plain Green even obtained data reports on the Plaintiff as part of the underwriting process.

67.     These data reports indicated that the Plaintiff resided in Polk County, Florida.

68.     At least some of these data reports were from consumer reporting agencies as defined under the FCRA.

69.     § 687.071(2), Fla. Stat., renders loans with annual interest rates greater than 25% as criminally usurious, while § 687.071(3), Fla. Stat., renders loans made with annual interest rates greater than 45% a third-degree felony.

Page **10** of 35

70.    § 687.071(7), Fla. Stat., renders any criminally usurious loan void and unenforceable. See also § 516.02(2)(c), Fla. Stat. (rendering debts unenforceable that originated from usurious contracts).

71.    Long-standing public policy in Florida confirms the alleged debt is unenforceable. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

72.    Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan.

73.    When a lender commits criminal usury, even the right to recover principal is prohibited. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

74.    The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

75.    Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, § 516, Fla. Stat. (the "Act").

76.    The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less, such as the Loan made to Mr. Taylor. § 516.02(1), Fla. Stat.

77. The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

78. § 516.02(c), Fla. Stat., indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

79. Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

80. Mr. Taylor's Loan charged an annual interest rate of 580.23%, more than 44 times the rate permitted by the Act and 23 times Florida's criminal usury rate.

81. Plain Green is not licensed as a Consumer Finance Company in Florida.

82. Accordingly, the Loan is void and unenforceable in its entirety against Mr. Taylor, regardless of whether it was valid under the law of the Tribe, or wherever else it may have been made.

83. Further, because the Loan was subject to interest at more than double Florida's enforceable rate, the Loan constitutes an *Unlawful Debt* as defined by 18 U.S.C. § 1961(6) and § 772.102(2), Fla. Stat.

84. As the Loan was made in violation of § 687, Fla. Stat., the Loan amounts to *Criminal Activity* per § 772.102(1)(a)(11), Fla. Stat.

### Direct Debt Attempts to Collect Unlawful Debt

85. At some point prior to October 2025, Direct Debt became the assignee of Mr. Taylor's purported $1,952.16 "debt."

86. Direct Debt then placed the debt for collection with Forest Hill directly.

87. Alternatively, Direct Debt placed the debt or with another company who then subcontracted with Forest Hill.

88. On October 29, 2025, Forest Hill obtained Mr. Taylor's credit report from Experian Information Solutions ("Experian"), a nationwide credit reporting agency ("CRA").

89. Experian recorded a record of the inquiry as such:

**Account name**
FOREST HILL ACCOUNT MANAGEMENT

**Date of request(s)**
10/29/2025

1 SENECA ST STE 2900
BUFFALO, NY 14203
8884710109

90. Forest Hill's request for Mr. Taylor's credit report was a communication in connection with the collection of a debt and sought information about Mr. Taylor.

91. The FCRA, 15 U.S.C. 1681a(d)(1), defines a consumer report as: "**any** written, oral, or other communication of **any** information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living…" (Emphasis added).

92. Thus, the report Forest Hill obtained from Experian is a "consumer report" as defined by the FCRA.

93. The FCRA at 15 U.S.C. § 1681b(f) prohibits any person from using a credit report for any purpose other than the stated purpose when requesting it from a CRA.

94. While the FCRA at § 1681b(a)(3)(A) allows for a person to obtain a credit report in connection with the "collection of an account" from a consumer, such certification as permissible purpose requires there a debt to be owed and collectable.

95. Here, no debt existed as the entire loan was void *ab initio* due to the application of a triple-digit interest rate.

96. As such, Forest Hill had no permissible purpose to obtain Mr. Taylor's credit report.

97. By obtaining Mr. Taylor's credit report without permissible purpose, Forest Hill violated the FCRA, 15 U.S.C. § 1681b.

98. A key reason for the implementation of the FCRA by Congress was to protect consumer privacy; *see* 15 U.S.C. § 1681(a)(4) ("It is in the public interest to … protect consumer privacy.")

99. By obtaining Mr. Taylor's legally protected, personal, and confidential information without permissible purpose, Forest Hill invaded Mr. Taylor's privacy.

100. Mr. Taylor must also now contend with the fact a debt collector engaged in the collection of unlawful debts has his legally protected, confidential personal information, account numbers, balances, etc.

101.  Forest Hill made other collection communications to Mr. Taylor, demanding payment of the Loan, including a collection email and demand made over the phone to him both on December 15, 2025.

102.  Forest Hill also sent Mr. Taylor several e-mails attempting to collect the Plain Green Loan.

103.  The Defendants' phone calls, e-mails, and voicemail messages to Mr. Taylor were *Communications* as defined by 15 U.S.C. § 1692a(2) and § 559.55(2), Fla. Stat.

104.  The communications sought to collect a balance related to a null, void, and usurious debt.

105.  At no point did Forest Hill disclose that the Plaintiff had no obligation to repay the loan due to its voided nature.

106.  In its communications with Mr. Taylor, Forest Hill implied, falsely, that they represented Plain Green.

107.  Forest Hill made statements such as "My client (Plain Green) supported you when you were in need of money. Now they expect their money back."

108.  Forest Hill also made implied threats of litigation in their communications attempting to collect the Plain Green debt.

109.  Forest Hill stated that the Plain Green Loan *was* enforceable against Mr. Taylor and sought to collect it.

110.  Forest Hill was acting, at all times relevant, as Direct Debt's agent.

## Younger & Chebat Are Personally Liable Under FCCPA, FDCPA

111. A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA without piercing the corporate veil.

112. Younger and Chebat, due to their roles at their respective companies, are personally liable under the statutes. *Fed. Trade Comm'n v. Primary Grp., Inc.*, No. 16-13532 (11th Cir. Sep. 29, 2017); *Schmidt v. Synergentic Commc'ns, Inc.*, No. 214-CV-539-FTM-29, 2015 WL 248635, at *3 (M.D. Fla. Jan. 20, 2015). *Pennsylvania v. Think Fin., Inc.*, CIVIL ACTION No. 14-cv-7139, at *57 (E.D. Pa. Jan. 14, 2016); *Cruz v. Int'l Collection Corp.*, 673 F.3d 991 (9th Cir. 2012).

113. Both Younger and Chebat are intricately involved in the operations of their companies, and as such have personal liability to Mr. Taylor and other Florida consumers under the FDCPA and FCCPA.

114. Chebat implemented and/or authorized the purchase of a portfolio of debts from Plain Green, knowing full well the underlying interest rates rendered the loans unlawful debts in Florida, and in many other states as well.

115. Chebat touts his expertise in asset management and purchasing, noting in his LinkedIn profile he has lead the "purchase and management" of over $1 Billion in assets.[1]

---

[1] https://www.linkedin.com/in/jimmychebat/, accessed December 17, 2025

116.   Chebat has elected to purchase and collect numerous unlawful debts, including Simple Fast Loans (200% interest and higher), 605 Lending (700% interest and higher), The Loansmith (700% interest and higher), and many others.

117.   This shows the intentionality of the Defendant's conduct.

118.   Younger, in turn, has accepted placements of clearly usurious debts from Direct Debt on many occasions. As but one example, Forest Hill is alleged to have collected debt originated by 605 Lending. *Allison Sharits vs. Dustin Dernier, Forest Hill Account Management Inc., et. al*, case 1:25-cv-11944, N.D. Ill., September 30, 2025.

### Defendants Constitute an Enterprise under CRCPA

119.   The CRCPA defines an "enterprise" as "any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity. § 772.102(3) Fla. Stat.

120.   The Defendants, along with Plain Green and other persons, are an association in fact enterprise who are associated together for the common purpose of making, collecting, and profiting off illegal loans.

121.   Each entity serves a distinct role: Plain Green (and its various service providers) make loans online, Direct Debt purchases the Loans once they are charged off, and Forest Hill communicates directly with the consumer to try and collect the loans.

122.   Courts throughout the nation have held that even the provision of ordinary and legal services (*e.g.*, the provision of debt collection services) can create liability under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961, et seq. ("RICO"), if the actors are aware of the greater scheme afoot. *See, e.g. Smith v. Berg*, 247 F. 3d 532, 537 (3d Cir. 2001) (relying on *Salinas v. United States*, 522 U.S. 52 (1997) (holding that a court may not dismiss a RICO claim against an alleged conspirator simply because the defendant characterizes itself as having merely provided ordinary services, if there are plausible allegations that those services were provided with an awareness of the broader scheme being furthered).

123.   Defendants have committed far more than two predicate acts. See, e.g., *Sharits*, Id., *Anthony Milam vs. Direct Debt Portfolio Management, LLC*, case 8:23-cv-00295, M.D. Fla., Feb. 10, 2023 (collection of 500% APR Plain Green Loan). Additionally, the Defendants agreed to the overall objective of the conspiracy.

124.   Defendants knowingly collaborated together for the common purpose of collecting unlawful debts.

125.   Mr. Taylor has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## **CLASS ACTION ALLEGATIONS**

126.   Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for himself and on behalf of the following classes of which he is a member, initially defined as:

**The "FCCPA Class":**

All natural persons within the State of Florida who received collection communications from Direct Debt, directly or via agents including Forest Hill or any other agent, concerning any alleged debt originally owed to Plain Green, in the past two (2) years preceding the filing of this Complaint, in which the communication failed to disclose the balance was not legally enforceable and instead demanded payment on the voided balance.

**The "FDCPA Class":**

All natural persons within the State of Florida who received collection communications from Direct Debt, directly or via agents including Forest Hill or any other agent, concerning any alleged debt originally owed to Plain Green, in the past year preceding the filing of this Complaint, in which the communication failed to disclose the balance was not legally enforceable and instead demanded payment on the voided balance.

**The "CRCPA Class":**

All natural persons within the State of Florida who received collection communications from Direct Debt, directly or via agents including Forest Hill or any other agent, concerning any alleged debt originally owed to Plain Green, in the past five (5) years preceding the filing of this Complaint, in which the communication sought collection of a loan balance.

**The "FCRA Class":**

All natural persons within the State of Florida who Forest Hill, or any other agent of Direct Debt, obtained a credit report concerning the person in connection with the collection of any null, void debt concerning Plain Green.

127. Excluded from the Classes are the Defendants and any of their officers, directors, and employees.

128. Plaintiff reserves the right to modify or amend the class definitions before the Court determines whether certification is appropriate.

129. **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Plain Green is heavily marketed online and accessible to consumers throughout Florida and each state in the country. Although the precise number of members in each class is unknown, on information and belief, there are at least 1,000 members of the FDCPA Class, FCCPA and CRCPA Classes, and at least 500 members of the FCRA Class, and the names and addresses of these persons are identifiable through documents and business records maintained by the Defendants. Thus, the class is so numerous that joinder of all members is impracticable. The class members may be notified of the pendency of this action by published or mailed notice.

130. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Classes which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants and associated persons constitute an *Enterprise* as defined by the CRCPA; (b) whether the Defendants participated in the enterprise through the collection of unlawful debt; (c) whether the Defendants participated in the enterprise through a pattern of criminal activity; (d) whether the Defendants conspired to collect unlawful debts; (e) whether Defendants' collection of Plain Green balances violated the FCCPA and/or the FDCPA; and (f) whether Defendants had permissible purpose to obtain credit reports under the FCRA.

131.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Plain Green made numerous loans to consumers throughout the United States, including Florida, charging interest in excess of state interest rate caps and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Classes and has the same claims for statutory damages that he seeks for members of the Classes.

132.    **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes and will fairly and properly protect the interests of the Classes. Plaintiff has retained experienced counsel who have litigated well over 2,000 consumer cases under consumer protection statutes, including RICO, the FDCPA, and the CRCPA. Plaintiff's counsel is competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

133.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the CRCPA, the FCCPA, and the FDCPA. The damages sought by each member are such that

individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the Classes individually to effectively redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

## COUNT I
### VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.
### CRCPA Class

134.    Plaintiff adopts and incorporates paragraphs 1 – 133 as if fully set forth at length herein.

135.    Loans made by Plain Green each charged interest in violation of Chapter 687, Fla. Stat.

136.    Violations of § 687 amount to *Criminal Activity* as defined by § 772.102(1)(11), Fla. Stat.

137.    The loans issued by Plain Green to Mr. Taylor and the Classes carried an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable and constitute *Unlawful Debts* under the CRCPA, § 772.102(2), Fla. Stat.

138.    As alleged above, the Defendants are a group of individuals associated in fact, although they are not a single legal entity. Together, the Defendants worked

toward a common goal of collecting balances originally asserted due to Plain Green and which had been subject to interest rates exceeding 500% annually.

139. The Defendants each associated with the enterprise and participated in the affairs of the enterprise as described in detail herein, which existed for the purpose of collecting unlawful debt.

140. Defendants each were responsible for managing their services to the enterprise.

141. The Defendants violated § 772.103(3), Fla. Stat., when they each participated in the enterprise, which enterprise conducted a pattern of criminal activity. At various times, the Defendants sent collection communications demanding payment of unlawful debts and/or received payment on void and unenforceable loan balances from Plaintiff and/or the Class members.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a. Certification for this matter to proceed as a class action;

b. Treble all amounts paid by Plaintiff and the putative class members towards their Plain Green loans, pursuant to § 772.104, Fla. Stat.

c. Reasonable attorneys' fees and costs; and

d. Such other and further relief the Court may deem just and proper.

## COUNT II
### VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.
### CRCPA Class

142.    Plaintiff repeats and realleges paragraphs 1 – 133 as if fully set forth at length herein.

143.    Loans made by Plain Green each charged interest in violation of Chapter 687, Fla. Stat. Violations of § 687 amount to *Criminal Activity* as defined by § 772.102(1)(11), Fla. Stat.

144.    The intent of Defendants is clear in that they knowingly engaged in a pattern whereby they collected debts made at interest rates exceeding 45% per annum, in violation of Section 687.071(3), Florida Statutes, and then proceeded to obtain proceeds therefrom.

145.    The intent of Defendants is clear in that they knowingly engaged in a pattern whereby they collected -- and continue to collect -- unlawful debt originating from myriad online lending platforms who make loans to consumers well in excess of 45% interest per annum, in violation of Section 687.071(3), Florida Statutes, all while claiming such loans are lawful and legitimate, when they know this not to be true.

146.    As alleged above, the Defendants are a group of individuals associated in fact, although they are not a single legal entity. Together, the Defendants worked toward a common goal of furthering the Plain Green racketeering scheme.

147.    The Defendants violated § 772.103(4), Fla. Stat. by conspiring with Plain Green, each other, and other persons, to collect unlawful debts.

148.   Defendants agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect balances of unlawful loans.

149.   The Defendants each took actions in furtherance of this conspiracy, including sent collection communications demanding payment of unlawful debts.

150.   The Defendants also each knew the ultimate goal of the enterprise – to collect loans charging well in excess of 25% APR.

**WHEREFORE**, Plaintiff and the putative class members pray for relief as follows:

a.   Certification for this matter to proceed as a class action;

b.   Treble all amounts paid by Plaintiff and the putative class members towards their Plain Green loans, pursuant to § 772.104, Fla. Stat.

c.   Reasonable attorneys' fees and costs; and

d.   Such other and further relief the Court may deem just and proper.

### COUNT III
### VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.
### FCCPA Class

151.   Mr. Taylor adopts and incorporates paragraphs 1 – 133 as if fully restated herein.

152.   The loans issued through Plain Green to Mr. Taylor and the Class were void, as the loans carried an interest rate more than double that of Florida's maximum statutory rate and were made without the required licensure under Florida's Consumer Finance Act, Chapter 516, Florida Statutes.

153. Defendants violated § 559.72(9), Fla. Stat., when they asserted the existence of legal rights which do not exist, specifically, the right to collect online payday loans which charged annual interest exceeding 500%, when such loans are null and void pursuant to Florida law.

154. Forest Hill sent collection communications to Mr. Taylor and the members of the Class at their homes in Florida in connection with the collection of Plain Green balances and made phone calls and sent text messages to Mr. Taylor and the members of the Class at their homes in Florida in connection with the collection of Plain Green balances.

155. Defendants asserted that loan balances from Plain Green were valid and owing when they were not.

156. Chebat and Younger directed their respective companies to make such assertions and continue to collect debts related to Plain Green and other similar online lenders, despite both being aware of the wildly-usurious rates of interest assessed on the loans.

157. Defendants acted with knowledge of the illegality of their actions in collecting debts originating from Plain Green, as they had the loan contracts in their possession which stated in large, 120-point type, the triple-digit interest rates assessed on the loans.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a.  Certification for this matter to proceed as a class action;

b.  Statutory damages of **$1,000.00**, paid to Plaintiff and the putative class members, pursuant to § 559.77(2), Fla. Stat.;

c.  Actual damages paid to the Plaintiff and the putative class members, pursuant to § 559.77(2), Fla. Stat.;

d.  An order enjoining Defendants from any further collection of loans made by Plain Green;

e.  Reasonable costs and attorneys' fees pursuant to § 559.77(2), Fla. Stat.; and,

f.  Such other relief that this Court deems just and proper.

## COUNT IV
## <u>VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e</u>
### FDCPA Class

158.  Mr. Taylor adopts and incorporates paragraphs 1 – 133 as if fully restated herein.

159.  The Defendants violated **15 U.S.C. § 1692e(2)(a)** when Direct Debt and Forest Hills, under the direction of Chebat and Younger, made false representations regarding the Debt by falsely representing in collection communications to Plaintiff that the Debt was enforceable despite it being unenforceable as usurious pursuant to Section 687.071(3), Florida Statutes as well as pursuant to the applicable law of other states governing usury and unlicensed consumer lending.

160. The actions of the Defendants were willful and intentional and representative of its normal business practices.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a.   Certification for this matter to proceed as a class action;

b.   Statutory damages of **$1,000.00**, paid to Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Actual damages paid to the Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

d.   An award of pre-judgment and post-judgment interest as provided by law;

e.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

f.   Such other relief that this Court deems just and proper;

**COUNT V**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(5)**
**FDCPA Class**

161. Mr. Taylor adopts and incorporates paragraphs 1 – 133 as if fully restated herein.

162. The Defendants violated **15 U.S.C. § 1692e(5)** when Direct Debt and Forest Hills, under the direction of Chebat and Younger, threatened action which could not legally be taken, to wit, that Defendants would collect debts originated by

Page **28** of **35**

Plain Green, when such debts were null, void and unenforceable under Florida law as well as the law of other states.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a.   Certification for this matter to proceed as a class action;

b.   Statutory damages of **$1,000.00**, paid to Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Actual damages paid to the Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

d.   An award of pre-judgment and post-judgment interest as provided by law;

e.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

f.   Such other relief that this Court deems just and proper.

**COUNT VI**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(1)**
**FDCPA Class**

163.   Mr. Taylor adopts and incorporates paragraphs 1 – 133 as if fully restated herein.

164.   The Defendants violated **15 U.S.C. § 1692f(1)** when Direct Debt and Forest Hills, under the direction of Chebat and Younger, attempted to collect the Plain

Green loans from Plaintiff and members of the putative class, when such loans were void, and thus, no contract or law authorized the balance.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a. Certification for this matter to proceed as a class action;

b. Statutory damages of **$1,000.00**, paid to Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Actual damages paid to the Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

d. An award of pre-judgment and post-judgment interest as provided by law;

e. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

f. Such other relief that this Court deems just and proper.

**COUNT VII**
**WILFULL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(f)**
**FCRA Class**

165. Mr. Taylor adopts and incorporates paragraphs 1 – 133 as if fully restated herein.

166. Forest Hill violated 15 U.S.C. § 1681b(f), either willfully and intentionally or recklessly and without regard for a consumer's rights, when it

requested a credit report from Experian regarding Mr. Taylor at a time when it did not have a permissible purpose.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a.      Certification for this matter to proceed as a class action;

b.      Statutory damages of **$1,000.00**, paid to Plaintiff and the putative class members, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c.      Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d.      Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

e.      Such other relief that this Court deems just and proper.

### COUNT VIII
### NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(f)
#### (Pled in the Alternative to Count VII)
#### FCRA Class

167.    Mr. Taylor adopts and incorporates paragraphs 1 – 133 as if fully restated herein and pleads this count strictly in the alternative to Count VII.

168.    Forest Hill violated 15 U.S.C. § 1681b(f), negligently and without regard for a consumer's rights, when it requested a credit report from Experian regarding Mr. Taylor at a time when it did not have a permissible purpose.

169.    Forest Hill owed Mr. Taylor a legal duty to refrain from requesting Mr. Taylor's credit reports unless it had permissible purpose to obtain it.

170.    Forest Hill breached this duty when it obtained Mr. Taylor's credit report when it had no legal right to do so.

171.    Forest Hill thus acted negligently, and Mr. Taylor is entitled to his actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

**WHEREFORE,** Plaintiff and the putative class members pray for relief as follows:

a.    Certification for this matter to proceed as a class action

b.    Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

d.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Taylor hereby demands a jury trial on all issues so triable.

Respectfully submitted on March 19, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Christian Cok*
Christian E. Cok, Esq.
Florida Bar Number: 1032167
CCok@SeraphLegal.com
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com
3505 E Frontage Road, Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBIT LIST

A      Mr. Taylor's Loan Agreement with Plain Green, April 2024, Excerpt